# EXHIBIT A

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

**LOS ANGELES LEGAL SOLUTIONS**
F. Jay Rahimi, Esq. (SBN: 305286)
jay@lalslaw.com
17200 Ventura Blvd., Suite 115
Encino, California 91316
Telephone: (818) 510-0555
Facsimile: (818) 510-0590

*Attorneys for Plaintiff*
*Anthony Cortez*

ELECTRONICALLY FILED
11/15/2022 5:51 PM
Kern County Superior Court
By Edith Carrillo, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF KERN – COMPLEX CIVIL

| | |
|---|---|
| ANTHONY CORTEZ, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>   vs.<br><br>CONVERGENT OUTSOURCING, INC.,<br><br>                Defendant. | Case No.     BCV-22-103113<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF:<br><br>1.  CALIFORNIA CONSUMER PRIVACY ACT OF 2018, CAL. CIV. CODE §§ 1798.100, *et seq.*;<br>2.  CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *et. seq.*; and<br>3.  NEGLIGENCE<br><br>DEMAND FOR JURY TRIAL |

//
//
//
//

- 1 -
CLASS ACTION COMPLAINT

Plaintiff ANTHONY CORTEZ ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class members"), by and through his attorneys, upon personal knowledge as to facts pertaining to himself and on information and belief as to all other matters, brings this class action against Defendant CONVERGENT OUTSOURCING, INC. ("Defendant" or "Convergent"), and alleges as follows:

## NATURE OF THE CASE

1.    This is a data breach class action against Defendant and its related entities, subsidiaries, and agents for failing to secure and safeguard the personally identifiable information ("PII") that Defendant collected and maintained and for failing to provide timely and adequate notice to Plaintiff and other Class members that their information had been stolen. Convergent is one of America's leading collections agencies with offices across the country.[1] For its business purposes, Defendant collects, receives, and maintains a substantial amount of PII from individuals, like Plaintiff, in its servers and/or networks.

2.    On or about October 26, 2022, Defendant disseminated a "Notice of Data Breach" letter announcing that on June 17, 2022, Defendant had become aware of a security incident affecting its computer systems and they discovered that there had been unauthorized access to Convergent's systems and the unauthorized actor deployed ransomware malware and certain data extraction tools on a storage drive that Convergent used to save and share files internally (the "Data Breach").  Defendant's investigation determined Plaintiff's and other similarly situated individuals' PII, including names, contact information, financial account numbers, and Social Security numbers, were included in the personal information or PII accessed and/or obtained in the Data Breach.

3.    Although the Data Breach was identified in June 2022, placing sensitive customer information in the hands of malicious actors as a result of Defendant's failure to safeguard Plaintiff's and others' PII, Defendant waited several months until on or around October 26, 2022 to provide the Notice of Data Breach to Plaintiff and other similarly situated Class members. This notice was still lacking in information necessary for Plaintiff and Class members to understand the

---

[1] https://www.convergentusa.com/outsourcing/site/who-is-convergent-outsourcing

scope and severity of the Data Breach. Due to this lapse in time between the Data Breach and Defendant's notice to affected Class members, unauthorized third parties have already been able to acquire and sell Plaintiff's and the Class members' PII (including Social Security Numbers) on the black market or dark web, or otherwise fraudulently misuse it for their personal gain.

4.     Defendant owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard the PII it collected from its customers and maintained for business purposes and stored on its networks.

5.     Defendant breached that duty by, *inter alia*, failing to implement and maintain reasonable security procedures and practices to protect PII from unauthorized access, disclosure, and exfiltration of Plaintiff's and Class members' personal information on inadequately protected servers and/or networks.

6.     The Data Breach happened because of Defendant's inadequate cybersecurity, which caused Plaintiff's and Class members' PII to be accessed, viewed, stolen and/or disclosed to unauthorized persons. This action seeks to remedy these failings. Plaintiff brings this action on behalf of himself individually and on behalf of all other similarly situated California residents affected by the Data Breach.

7.     As set forth in the Prayer for Relief, among other things, Plaintiff seeks, for himself and the Class, equitable relief, including public injunctive relief, and actual damages.

## **VENUE AND JURISDICTION**

8.     This Court has jurisdiction over this action pursuant to Cal. Code Civ. Proc. § 410.10 and Cal. Bus. & Prof. Code §§ 17203-17204, 17604. This action is brought as a class action on behalf of Plaintiff and Class members pursuant to Cal. Code Civ. Proc. § 382.

9.     This Court has personal jurisdiction over Defendant because Defendant's regularly conducts business in California and with California consumers.

10.     Venue is proper in this Court pursuant to Cal. Code Civ. Proc. §§ 395 and 395.5 because Defendant regularly conducts business in this county, and unlawful acts or omissions have occurred in this county.

**PARTIES**

11.    At all relevant times, Plaintiff resided in Kern County, California. Plaintiff is an individual who had his personal information and PII collected and maintained by Defendant.

12.    As a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information it collected and maintained, Plaintiff's PII accessed, exfiltrated, viewed, stolen and/or disclosed to unauthorized persons in the Data Breach.

13.    Defendant is a debt collector and corporation formed under the laws of the state of Washington with its principal place of business and/or headquarters located in Renton, Washington.

**FACTUAL ALLEGATIONS**

***PII Is a Valuable Property Right that Must Be Protected***

14.    The California Constitution guarantees every Californian a right to privacy and PII is a recognized valuable property right.[2] California has repeatedly recognized this property right, most recently with the passage of the California Consumer Privacy Act of 2018.

15.    In a Federal Trade Commission ("FTC") roundtable presentation, former Commissioner, Pamela Jones Harbour, underscored the property value attributed to PII by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[3]

16.    The value of PII as a commodity is measurable. "PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of

---

[2]    *See* John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *2 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[3]    FTC, *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable) (Dec. 7, 2009), https://www.ftc.gov/public-statements/2009/12/remarks-ftc-exploring-privacy-roundtable.

traditional financial assets."[4] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market" for several years.

17.     Companies recognize PII as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market.[5]

18.     As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals openly post credit card numbers, Social Security numbers, PII and other sensitive information directly on various illicit Internet websites making the information publicly available for other criminals to take and use. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims. In one study, researchers found hundreds of websites displaying stolen PII and other sensitive information. Strikingly, none of these websites were blocked by Google's safeguard filtering mechanism – the "Safe Browsing list."

19.     Recognizing the high value that consumers place on their PII, some companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information they share – and who ultimately receives that information. By making the transaction transparent, consumers will make a profit from the surrender of their PII.[6] This business has created a new market for the sale and purchase of this valuable data.[7]

20.     Consumers place a high value not only on their PII, but also on the privacy of that data. Researchers shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and

---

[4]     *See* Soma, *Corporate Privacy Trend, supra.*
[5]     Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html.
[6]     Steve Lohr, *You Want My Personal Data? Reward Me for It*, N.Y. Times (July 16, 2010) *available at* https://www.nytimes.com/2010/07/18/business/ 18unboxed.html.
[7]     *See* Julia Angwin and Emil Steel, *Web's Hot New Commodity: Privacy*, Wall Street Journal (Feb. 28, 2011) *available at* https://www.wsj.com/articles/SB10001424052748703529004576 160764037920274.

1  accessible, some consumers are willing to pay a premium to purchase from privacy protective

2  websites."[8]

3      21.      One study on website privacy determined that U.S. consumers valued the restriction

4  of improper access to their PII between $11.33 and $16.58 per website.[9]

5      22.      Given these facts, any company that transacts business with a consumer and then

6  compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary

7  value of the consumer's transaction with the company.

8              ***Theft of PII Has Grave and Lasting Consequences for Victims***

9      23.      A data breach is an incident in which sensitive, protected, or confidential data has

10  potentially been viewed, stolen, or used by an individual unauthorized to do so. As more consumers

11  rely on the internet and apps on their phone and other devices to conduct every-day transactions,

12  data breaches are becoming increasingly more harmful.

13     24.      Theft or breach of PII is serious. The California Attorney General recognizes that

14  "[f]oundational" to every Californian's constitutional right to privacy is "information security: if

15  companies collect consumers' personal data, they have a duty to secure it. An organization cannot

16  protect people's privacy without being able to secure their data from unauthorized access."[10]

17     25.      The United States Government Accountability Office noted in a June 2007 report on

18  Data Breaches ("GAO Report") that identity thieves use PII to take over existing financial accounts,

19  open new financial accounts, receive government benefits and incur charges and credit in a person's

20  name.[11] As the GAO Report states, this type of identity theft is so harmful because it may take time

21  for the victim to become aware of the theft and can adversely impact the victim's credit rating.

22

23  ───────────────

24  [8]      Janice Y. Tsai, et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An*

25  *Experimental Study Information Systems Research* 22(2) 254, 254 (June 2011), *available at*
    https://www.jstor.org/stable/23015560?seq=1#

26  [9]      II–Horn, Hann, et al., *The Value of Online Information Privacy: An Empirical Investigation*

27  (Mar. 2003) at table 3, *available at* https://ideas.repec.org/p/wpa/wuwpio/0304001.html (emphasis
    added).

28  [10]      California Data Breach Report, Kamala D. Harris, Attorney General, California Department
    of Justice, February 2016.

    [11]      *See* GAO, GAO Report 9 (2007) *available at* http:///www.gao.gov/new.items/d07737.pdf.

KAZEROUNI
LAW GROUP, APC

26.     In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records … [and their] good name." According to the FTC, identity theft victims must spend countless hours and large amounts of money repairing the impact to their good name and credit record.[12]

27.     Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[13] According to Experian, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[14]

28.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using

---

[12]     *See* FTC Identity Theft Website: https://www.consumer.ftc.gov/features/feature-0014-identity-theft.

[13]     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer, or taxpayer identification number." *Id.*

[14]     *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself?*, EXPERIAN (Sept. 7, 2017), *available at* https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

your Social Security number and assuming your identity can cause a lot of problems.[15]

29.     According to the IBM and Ponemon Institute's 2019 "Cost of a Data Breach" report, the average cost of a data breach per consumer was $150 per record.[16] Other estimates have placed the costs even higher. The 2013 Norton Report estimated that the average cost per victim of identity theft – a common result of data breaches – was $298 dollars.[17] And in 2019, Javelin Strategy & Research compiled consumer complaints from the FTC and indicated that the median out-of-pocket cost to consumers for identity theft was $375.[18]

30.     A person whose PII has been compromised may not see any signs of identity theft for years. According to the GAO Report:

> "[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."

31.     For example, in 2012, hackers gained access to LinkedIn's users' passwords. However, it was not until May 2016, four years after the breach, that hackers released the stolen email and password combinations.[19]

32.     It is within this context that Plaintiff and thousands of similar Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by unauthorized persons willing to use the information for any number of improper purposes and scams, including making the information available for sale on the dark web and/or the black market.

---

[15]     Brian Naylor, Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying- about-identity-theft.

[16]     Brook, *What's the Cost of a Data Breach in 2019*, *supra*.

[17]     Norton By Symantec, 2013 Norton Report 8 (2013), *available at* https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf.

[18]     Facts + Statistics: *Identity Theft and Cybercrime*, Insurance Information Institute, *available at* https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (citing the Javelin report).

[19]     *See* Cory Scott, *Protecting Our Members*, LINKEDIN (May 18, 2016), *available at* https://blog.linkedin.com/2016/05/18/protecting-our-members.

KAZEROUNI LAW GROUP, APC

*Defendant's Collection of Individuals' PII*

33.    Defendant collects the PII of individuals like Plaintiff and the Class members through its assignors, predecessors, or clients seeking debt collection  services. This PII includes, *inter alia*, Plaintiff and the Class members' names, contact information, financial account information, and Social Security numbers.

34.    Defendant represents in it its Privacy Policy that they "incorporate commercially reasonable safeguards to help protect and secure your Personal Information."[20]

35.    In its California Online Privacy Policy, Defendant concedes that it is susceptible to data breaches and ransomware threats, acknowledging it must "detect security incidents, protecting against malicious, deceptive, fraudulent, or illegal activity, and prosecuting those responsible for that activity."[21]

36.    Defendant had the duty to keep Plaintiff and the Class members' sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Consumers like Plaintiff and the Class members, in general, demand that businesses that require highly sensitive PII will provide security to safeguard their PII, particularly when Social Security numbers are involved.

37.    Defendant's Privacy Policy states that it collects PII such as "first and last name, home address, email address, phone number, employer or other affiliated company name, account number, online account information, and bank account or payment card information."[22]

38.    Defendant's CCPA Privacy Policy[23] states that in the past 12 months it has collected the following categories of PII:

- Identifiers, including first and last name, home address, email address, phone number, Social Security number, or other similar identifiers.

- Professional or employment information, or other affiliated company names.

---

[20]    *See* https://www.convergentusa.com/outsourcing/page/privacy-policy
[21]    *See* https://www.convergentusa.com/outsourcing/page/ccpa-policy
[22]    *See* https://www.convergentusa.com/outsourcing/page/privacy-policy
[23]    *See* https://www.convergentusa.com/outsourcing/page/ccpa-policy

CLASS ACTION COMPLAINT

- Account information, including account number and online account information.
- Financial information, including bank account and payment card information.
- Audio, electronic, visual, or similar information.
- Internet or other electronic network activity information, including, but not limited to, your IP address, unique device identifier, device functionality (including browser, operating system, hardware, mobile network information), your device location, your device characteristics, the time of day you visit our Site, the URL that referred you to our Site, browsing history, search history, and information regarding your interaction with our Site, application, or advertisements, including the areas within our Site that you visit and your activities there.
- Any other information that identifies, relates to, describes, is reasonably capable of being associated with, or could be reasonably linked, directly or indirectly, with you or your household.

***The Data Breach***

39.     On or around October 26, 2022, Defendant issued an official Notice of Data Breach to Plaintiff and other Class members who were victims of the Data Breach, stating that "an external actor gained unauthorized access to our systems and deployed a ransomware malware" and that its "investigation also revealed that the unauthorized actor deployed certain data extraction tools on one storage drive that is used to save and share files internally."

40.     According to Defendant, its investigation determined that Plaintiff and other similarly situated Class members' PII, including names, contact information, financial account numbers, and Social Security numbers, were included in the personal information or PII accessed and/or obtained in the Data Breach.

41.     Defendant's Notice of Data Breach letter provided little other information regarding the Data Breach itself. For instance, Defendant provided no information regarding why it waited months since learning of the data breach and identifying Plaintiff and other affected Class members to send them notice or how many people were affected by the Data Breach.

CLASS ACTION COMPLAINT

42.     As a result of the Data Breach, Plaintiff has suffered an invasion and loss of Plaintiff's privacy, and Plaintiff has requested that a freeze be placed on his credit and spent additional time monitoring Plaintiff's personal financial accounts and credit reports, which was time that Plaintiff otherwise would have spent performing other activities or leisurely events for the enjoyment of life rather than mitigating the impact of the Data Breach.

43.     As a result of the Data Breach, Plaintiff is and will continue to be at heightened risk for financial fraud and/or identity theft, and the associated damages resulting from it, for years to come.

### Defendant Knew or Should Have Known PII Are High Risk Targets

44.     Defendant knew or should have known that PII like that at issue here, is a high-risk target for identity thieves.

45.     The Identity Theft Resource Center reported that the banking/credit/financial sector had the third largest number of breaches in 2018. According to the ITRC this sector suffered 135 data breaches exposing at least 1,709,013 million records in 2018.[24]

46.     Prior to the Data Breach there were many reports of high-profile data breaches that should have put a company like Defendant on high alert and forced it to closely examine its own security procedures, as well as those of third parties with which it did business and gave access to its subscriber PII. Notable breaches included Capital One, which announced that in March 2019 a hacker had gained access to 100 million U.S. customer accounts and credit card applications. Similarly, in May 2019, First American Financial reported a security incident on its website that potentially exposed 885 million real estate and mortgage related documents, among others. Across industries, financial services have the second-highest cost per breached record, behind healthcare. In

---

[24]     Identity Theft Resource Center, *2018 End-of-Year Data Breach Report*, *available at* https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf.

KAZEROUNI
LAW GROUP, APC

1   financial services, an average breach costs $210 per record, while a "mega breach," like Capital

2   One's, can cost up to $388 per record.[25]

3          47.   Anurag Kahol, CTO of Bitglass recently commented that "[g]iven that organizations

4   in the financial services industry are entrusted with highly valuable, personally identifiable

5   information (PII), they represent an attractive target for cybercriminals[.]" HelpNetSecurity reports

6   that "[h]acking and malware are leading the charge against financial services and the costs

7   associated with breaches are growing. Financial services organizations must get a handle on data

8   breaches and adopt a proactive security strategy if they are to properly protect data from an

9   evolving variety of threats."[26]

10          48.   As such, Defendant was aware that PII is at high risk of theft, and consequently

11   should have but did not take appropriate and standard measures to protect Plaintiff's and Class

12   members' PII against cyber-security attacks that Defendant should have anticipated and guarded

13   against.

14                           **CLASS ACTION ALLEGATIONS**

15          49.   Pursuant to Cal. Code Civ. Proc. § 382 and Cal. Civ. Code § 1781, Plaintiff seeks to

16   represent and intends to seek certification of a class (the "Class") defined as:

17               ***All California residents whose PII was subjected to the Data Breach.***

18          50.   Excluded from the Class are: (1) Defendant and its officers, directors, employees,

19   principals, affiliated entities, controlling entities, agents, and other affiliates; (2) the agents,

20   affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such

21   persons or entities described herein; and (3) the Judge(s) assigned to this case and any members of

22   their immediate families.

23

24

25   _____

26   [25]   Samantha Ann Schwartz, *62% of breached data came from financial services in 2019*,
     CioDive (Dec. 23, 2019), *available at* https://www.ciodive.com/news/62-of-breached-data-came-
27   from-financial-services-in-2019/569592/.
     [26]   HelpNetSecurity, *Hacking and malware cause 75% of all data breaches in the financial*
28   *services industry* (Dec. 17, 2019), *available at* https://www.helpnetsecurity.com/2019/12/17/data-
     breaches-financial-services/.

KAZEROUNI
LAW GROUP, APC

51.     Certification of Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

52.     The Class members are so numerous and geographically dispersed throughout California that joinder of all Class members would be impracticable. While the exact number of Class members is unknown, based on information and belief, the Class consists of thousands of persons whose personal information was compromised in Data Breach, including Plaintiff and the Class members. Plaintiff therefore believes that the Class is so numerous that joinder of all members is impractical.

53.     Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had their PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

54.     There is a well-defined community of interest in the common questions of law and fact affecting Class members. The questions of law and fact common to Class members predominate over questions affecting only individual Class members, and include without limitation:

(a) Whether Defendant had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the PII it collected, stored, and maintained from Plaintiff and Class members;

(b) Whether Defendant breached its duty to protect the PII of Plaintiff and each Class member; and

(c) Whether Plaintiff and each Class member are entitled to damages and other equitable relief.

55.     Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that Plaintiff has no interests adverse to or that conflicts with the Class Plaintiff seeks to represent. Plaintiff has retained counsel with substantial

experience and success in the prosecution of complex consumer protection class actions of this nature.

56.     A class action is superior to any other available method for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impractical. Furthermore, the expenses and burden of individual litigation would make it difficult or impossible for the individual members of the Class to redress the wrongs done to them, especially given that the damages or injuries suffered by each individual member of the Class are outweighed by the costs of suit. Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments. By contrast, a class action presents fewer management difficulties and provides the benefits of single adjudication and comprehensive supervision by a single court.

57.     Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive, including public injunctive relief, and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the California Consumer Privacy Act of 2018 ("CCPA")**
**Cal. Civ. Code §§ 1798.100,** *et seq.*

58.     Plaintiff reallege and incorporates by reference all proceeding paragraphs as if fully set forth herein.

59.     As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access. The California Legislature explained: "The unauthorized disclosure of personal information and the loss of privacy can have devasting effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to

1    destruction of property, harassment, reputational damage, emotional stress, and even potential

2    physical harm."[27]

3        60.    As a result, in 2018, the California Legislature passed the CCPA, giving consumers

4    broad protections and rights intended to safeguard their personal information. Among other things,

5    the CCPA imposes an affirmative duty on businesses that maintain personal information about

6    California residents to implement and maintain reasonable security procedures and practices that are

7    appropriate to the nature of the information collected. Defendant failed to implement such

8    procedures which resulted in the Data Breach.

9        61.    It also requires "[a] business that discloses personal information about a California

10    resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the

11    third party implement and maintain reasonable security procedures and practices appropriate to the

12    nature of the information, to protect the personal information from unauthorized access, destruction,

13    use, modification, or disclosure." 1798.81.5(c).

14        62.    Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted

15    or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access

16    and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement

17    and maintain reasonable security procedures and practices appropriate to the nature of the

18    information to protect the personal information may institute a civil action for" statutory or actual

19    damages, injunctive or declaratory relief, and any other relief the court deems proper.

20        63.    Plaintiff and Class members are "consumer[s]" as defined by Civ. Code

21    § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in

22    Section 17014 of Title 18 of the California Code of Regulations, as that section read on September

23    1, 2017."

24        64.    Defendant is a "business" as defined by Civ. Code § 1798.140(c) because Defendant:

25

26

27    _____

28    [27]    California Consumer Privacy Act (CCPA) Compliance, https://buyergenomics.com/ccpa-complience/.

- 15 -

KAZEROUNI
LAW GROUP, APC

a)    is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners";

b)    "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information";

c)    does business in and is headquartered in California; and

d)    has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

65.    The PII accessed and taken by unauthorized persons in the Data Breach is "personal information" as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and other Class members' unencrypted names, addresses, loan account numbers, and Social Security numbers, among other personal information.

66.    Plaintiff's PII was subject to unauthorized access and exfiltration, theft, or disclosure because his PII, including name, address, loan account number, and Social Security number, at minimum, wrongfully accessed, viewed, and/or taken by unauthorized persons in the Data Breach.

67.    The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and Class members' PII. Defendant failed to implement reasonable security procedures to prevent an attack on its servers by hackers and to prevent unauthorized access of Plaintiff's and Class members' PII as a result of the Data Breach.

68.    On or about November 15, 2022, Plaintiff provided Defendant with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). *See* Exhibit A. If Defendant does not cure the violation within 30 days, Plaintiff will amend this complaint to pursue statutory damages as permitted by Civil Code § 1798.150(a)(1)(A).

KAZEROUNI
LAW GROUP, APC

69.     As a result of Defendant's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff, on behalf of himself individually and the Class, seeks actual damages, equitable relief, including public injunctive relief, and declaratory relief, and any other relief as deemed appropriate by the Court.

**SECOND CAUSE OF ACTION**

**Violation of the California Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

70.     Plaintiff re-alleges and incorporates by reference all proceeding paragraphs as if fully set forth herein.

71.     The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning, and in violation of, the UCL.

72.     In the course of conducting its business, Defendant committed "unlawful" business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class members' PII, and by violating the statutory and common law alleged herein, including, *inter alia*, California Consumer Privacy Act of 2018 (Cal. Civ. Code §§ 1798.100, *et seq.*), Article I, Section 1 of the California Constitution (California's constitutional right to privacy) and Civil Code § 1798.81.5, and/or Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data. Plaintiff and Class members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

73.     Defendant also violated the UCL by failing to timely notify Plaintiff and Class members pursuant to Civil Code § 1798.82(a) regarding the unauthorized access and disclosure of their PII. If Plaintiff and Class members had been notified in an appropriate fashion, they could have taken precautions to better safeguard and protect their PII and identities.

74.     Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and unscrupulous. Defendant's practices are also contrary to legislatively declared and public policies that seek to protect PII and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws such as the CCPA, Article I, Section 1 of the California Constitution, and the FTC Act (15 U.S.C. § 45). The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

75.     The UCL also prohibits any "fraudulent business act or practice." Defendant's above-described claims, nondisclosures and misleading statements were false, misleading, and likely to deceive the consuming public in violation of the UCL.

76.     As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the UCL, Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft and identity fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII, (iv) statutory damages under the CCPA, (v) deprivation of the value of their PII for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring their credit, monitoring financial accounts, and mitigating damages.

1    77.    Unless restrained and enjoined, Defendant will continue to engage in the above-
2  described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of
3  himself, the Class members, and the general public, also seeks restitution and an injunction,
4  including public injunctive relief prohibiting Defendant from continuing such wrongful conduct,
5  and requiring Defendant to modify its corporate culture and design, adopt, implement, control,
6  direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies,
7  procedures protocols, and software and hardware systems to safeguard and protect the PII entrusted
8  to it, as well as all other relief the Court deems appropriate, consistent with Bus. & Prof. Code
9  § 17203.

10                        **THIRD CAUSE OF ACTION**

11                               **Negligence**

12    78.    Plaintiff re-alleges and incorporates by reference all proceeding paragraphs as if fully
13  set forth herein.

14    79.    Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in
15  safeguarding and protecting their PII in its possession, custody, or control.

16    80.    Defendant and the Class members' PII was entrusted to Defendant's with the
17  understanding that Defendant would safeguard their personal information.

18    81.    Defendant had full knowledge of the sensitivity of the PII and the types of harm that
19  Plaintiff and Class members could and would suffer if the PII were wrongfully disclosed or
20  accessed by unauthorized persons.

21    82.    By collecting and storing the personal information, or PII, of Plaintiff and the Class
22  members, Defendant had a duty to use reasonable means to secure and safeguard its computer
23  systems and networks—and Class members' PII held within it— to prevent disclosure of the
24  information, and to safeguard the information from unauthorized access or disclosure, to promptly
25  detect a breach of its security systems, and to give prompt notice to those affected in the event of a
26  data breach.

27

28

83. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

84. Defendant was negligent and breached its duties by failing to use reasonable security practices and procedures to safeguard Plaintiff and the Class members' PII.

85. It was foreseeable that Defendant's failure to use reasonable security practices and procedures to safeguard Plaintiff and the Class members' PII would result in injury to Plaintiff and the Class. Further, the Data Breach was reasonably foreseeable given the known danger and frequency of cyberattacks, phishing and ransomware attacks, and data breaches in the industry.

86. As a result of Defendant's negligence, Plaintiff and the Class members have suffered and will continue to suffer damages and injury including, but not limited to out-of- pocket expenses associated with procuring robust identity protection and restoration services; increased risk of future identity theft and fraud, the costs associated therewith; time spent monitoring, addressing and correcting the current and future consequences of the Data Breach; and the necessity to engage legal counsel and incur attorneys' fees, costs and expenses.

87. Plaintiff and the Class are entitled to compensatory and consequential damages suffered as a result of the Data Breach, as well as injunctive relief and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself individually as well as all members of the Class respectfully requests that (i) this action be certified as a class action, (ii) Plaintiff each be designated a representative of the Class, (iii) Plaintiff's counsel be appointed as counsel for the Class. Plaintiff, on behalf of himself and members of the Class further request that upon final trial or hearing, judgment be awarded against Defendant for:

- o general, compensatory, and/or consequential damages
- o actual and punitive damages to be determined by the trier of fact;
- o equitable relief, including restitution;
- o appropriate injunctive relief;
- o declaratory relief;

1

   o   attorneys' fees and litigation expenses under Code of Civil Procedure § 1021.5 and

2

       other applicable law;

3

   o   costs of suit;

4

   o   pre-judgment and post-judgment interest at the highest legal rates applicable; and

5

   o   such other and further relief the Court deems just and proper.

6

**DEMAND FOR JURY TRIAL**

7

   Plaintiff hereby demands a jury trial on all issues so triable.

8

9

Dated: November 15, 2022                    Respectfully submitted,

10

                                            **KAZEROUNI LAW GROUP, APC**

11

12

                            By: _____

13

                                            Abbas Kazerounian
                                            Mona Amini

14

                                            245 Fischer Avenue, Unit D1
                                            Costa Mesa, California 92626

15

                                            Telephone: (800) 400-6808
                                            Facsimile:  (800) 520-5523

16

                                            F. Jay Rahimi

17

                                            LOS ANGELES LEGAL SOLUTIONS
                                            17200 Ventura Blvd., Suite 115

18

                                            Encino, California 91316
                                            Telephone: (818) 510-0555
                                            Facsimile:  (818) 510-0590

19

20

                                            *Attorneys for Plaintiff*

21

22

23

24

25

26

27

28

- 21 -

CLASS ACTION COMPLAINT

# EXHIBIT A



245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
www.kazlg.com

November 15, 2022

**VIA U.S. MAIL**
CONVERGENT OUTSOURCING, INC.
3850 N. CAUSEWAY BLVD
METAIRIE, LA 70002

**Re:** *Anthony Cortez v. Convergent Outsourcing, Inc.*

To Whom It May Concern:

We represent Plaintiff Anthony Cortez ("Plaintiff") and all other similarly situated consumers in a putative class action against Convergent Outsourcing, Inc. ("Defendant") arising out of Defendant's failure to provide reasonable security for Plaintiff's and the proposed Class members' personal information, which resulted in the unauthorized access, theft, or disclosure of this information (the "Data Breach"). To our knowledge. the Data Breach occurred sometime on or around June 17, 2022.

The full claims, including the facts and circumstances surrounding these claims are detailed in Plaintiff's Class Action Complaint, a copy of which is attached and incorporated by reference. Defendant's conduct constitutes violations of California Civil Code §§ 1798.81.5(a)(1) and 1798.150(a)(1).

While this letter and the attached Complaint constitute sufficient notice of the claims asserted against Defendant, pursuant to California Civil Code 1798.150(b)(1), Plaintiff demands that in the event a cure is possible, Defendant is hereby provided the opportunity to actually cure the noticed violations and provide Plaintiff with an express written statement within 30 days that the violations have been cured and that no further violations shall occur. A cure, if possible, requires that all the information taken has been recovered and that Plaintiff and the proposed class members of similarly situated persons are not at any risk of any of the information being used.

Thank you for your time and attention to this matter.

Sincerely,

*s/ Abbas Kazerounian*

Abbas Kazerounian, Esq.
KAZEROUNI LAW GROUP, APC
Direct Line: (800) 400-6808, Ext. 2
E-mail: ak@kazlg.com

[Enclosure]

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Abbas Kazerounian (249203), Mona Amini (296829)
KAZEROUNI LAW GROUP, APC
245 Fischer Ave., Unit D1, Costa Mesa, CA 92626

TELEPHONE NO.: (800) 400-6808    FAX NO. *(Optional):* (800) 520-5523
ATTORNEY FOR *(Name):* Plaintiff, Anthony Cortez

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** KERN
STREET ADDRESS: 1215 Truxtun Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Bakersfield, CA 93301
BRANCH NAME: Metropolitan Division

CASE NAME:
Anthony Cortez v. Convergent Outsourcing, Inc.

*FOR COURT USE ONLY*

ELECTRONICALLY FILED
11/15/2022 5:51 PM
Kern County Superior Court
By Edith Carrillo, Deputy

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☒ **Unlimited** (Amount demanded exceeds $25,000) ☐ **Limited** (Amount demanded is $25,000) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BCV-22-103113  JUDGE:  DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☒ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/wd tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☒ is ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☒ Substantial amount of documentary evidence
   d. ☒ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☒ punitive
4. Number of causes of action *(specify):*
5. This case ☒ is ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: November 15, 2022

Abbas Kazerounian
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**For your protection and privacy, please press the Clear**

**Tamarah Harber-Pickens**
Clerk of the Superior Court



**SUPERIOR COURT**
Telephone 661-868-5393
1215 Truxtun Avenue
Bakersfield CA 93301

**ABBAS KAZEROUNIAN**

**E-FILE**

Date :                                       **12/01/2022**
Case No.:                             **BCV-22-103113**
Case Name:    **ANTHONY CORTEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED VS CONVERGENT OUTSOURCING, INC.**

Document:              **SUMMONS**

The attached papers are being returned for the following reason(s):   ☐ Check # _____ Returned

- ☐ This pleading does not appear to be for Superior Court, Kern County.
- ☐ The attached document is an improper *ex-parte* communication and has not been considered by the Court.
- ☐ Fee of $_____ required or a Request to Waive Court Fees must be submitted.
- ☐ **Application for Waiver of Fees missing attachment(s):**
  - ☐ Last three (3) paystubs, if employed.
  - ☐ Certified Copy of Statement of Account for previous six (6) months certified by Dept. of Corrections
  - ☐ Trust Account Withdrawal Order form (CDC form 193) completed by the Dept. of Corrections indicating $3.00 fee to Dept. of Corrections has been paid or insufficient funds in the account to cover.
- ☐ Does not conform to Rule 2.100-2.119, California Rules of Court, as to form and format.
- ☐ Superior Court case number is wrong, incomplete, or missing.
- ☐ Consolidated matter: All consolidated case numbers must be listed in the heading with the lead case listed first.
- ☐ Consolidated matter:
- ☐ Title is incorrect or missing parties.
- ☐ Summons does not conform to complaint/cross-complaint/petition.
- ☐ Not an original. Copies are not acceptable.
- ☐ Copies must be provided if *endorsed* copies are requested. Submit one original plus _____ copy(ies).
- ☐ Does not conform to Kern County Local Rule/Code:
- ☐ Must use Mandatory Judicial Council form.
- ☐       is not eligible for filing. Reason:
- ☐ Item(s) # _____ incomplete.
- ☐ Missing required forms/attachment:
- ☐ Original Will must be presented at the time of filing petition.
- ☐ Signature missing:
- ☐ Date and place of execution not completed.
- ☐ Document(s) must be verified.
- ☐ Show date, time, and location of hearing pursuant to California Rules of Court.
- ☐ The date you have noticed this matter is a Court holiday/weekend.
- ☐ Acknowledgement of Receipt/Citation must be attached to the completed proof of service.
- ☐ Attach Proof of Service on opposing party.
- ☐ Correct Proof of Service**:**
- ☐ Not appraised by the Probate Referee.
- ☐ Order/Judgment does not conform to the Court minutes.
- ☐ Order page does not contain enough information regarding case; need at least three lines of text with identifying information for order and case (short title case and case number).
- ☐ Dismissal cannot be entered for the following reasons:
- ☒ Other: **Summons does not conform exactly to Complaint. Please review Party information**

**Tamarah Harber-Pickens**
CLERK OF THE SUPERIOR COURT

By: _Edith Carrillo_____ , Deputy Clerk

**ANY CORRESPONDENCE REQUIRING AN ANSWER FROM THE COURT MUST BE**
**ACCOMPANIED BY A SELF-ADDRESSED STAMPED ENVELOPE LARGE ENOUGH TO RETURN DOCUMENTS**



**ANY CORRESPONDENCE REQUIRING AN ANSWER FROM THE COURT MUST BE
ACCOMPANIED BY A SELF-ADDRESSED STAMPED ENVELOPE LARGE ENOUGH TO RETURN DOCUMENTS**

Rev. 12/2017

SUPERIOR COURT OF CALIFORNIA

COUNTY OF KERN

BAKERSFIELD COURT

1215 TRUXTUN AVENUE

BAKERSFIELD CA  93301

FOR COURT USE ONLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN

DECEMBER 01, 2022
BY *Edith Carrillo* DEPUTY

**PLAINTIFF/PETITIONER:**
   ANTHONY CORTEZ, INDIVIDUALLY AND ON BEHALF OF
   ALL OTHERS SIMILARLY SITUATED
**DEFENDANT/RESPONDENT:**
   CONVERGENT OUTSOURCING, INC.

**NOTICE OF ASSIGNMENT TO JUDGE FOR ALL PURPOSES AND
NOTICE OF ORDER TO SHOW CAUSE RE CRC RULE 3.110 AND
NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER:

BCV-22-103113

By order of the presiding judge, the above entitled case is assigned to the Honorable Thomas S. Clark for all purposes.  It will be managed on the direct calendar program in Bakersfield Department 17 located at 1415 Truxtun Avenue until its conclusion. Peremptory challenges, if any, must be made within the times set out in CCP §170.6.  Please include the initials **TSC** after the case number on all future pleadings filed in this case.

**TO PLAINTIFF AND PLAINTIFF'S COUNSEL:**
You are ordered to appear on **March 20, 2023** in **Bakersfield Department 17 located at 1415 Truxtun Avenue** at **8:30 AM** to give any legal reason why sanctions shall not be imposed for failure to serve the complaint on all named defendants and file proof(s) of service with the court within sixty (60) days after the filing of the complaint pursuant to California Rules of Court, Rule 3.110.  All appearances are mandatory, unless the court receives the required proof(s) of service five (5) court days prior to the hearing date, and then no appearance is necessary.

**TO EACH PARTY AND THEIR RESPECTIVE ATTORNEY(S) OF RECORD:**
This case is set for Case Management Conference, by the Honorable Thomas S. Clark on **May 30, 2023** at **8:15AM** in **Bakersfield Department 17 located at 1415 Truxtun Avenue**.  Case management statements are to be filed at least fifteen (15) days prior to the conference in accordance with California Rules of Court, Rules 3.720 – 3.730.  All parties shall comply with California Rules of Court, Rules 3.720 – 3.730.

## NOTICE TO PLAINTIFF'S COUNSEL

**IMPORTANT:  You are required to serve this Notice of Assignment and Notice of Order to Show Cause Date and Notice of Case Management Conference Date with the Summons, Complaint [Local Rule 3.7(a)], Alternative Dispute Resolution (ADR) Information Packet, and ADR Stipulation and Order Form ( California Rules of Court, Rule 3.221).**

## NOTICE TO CROSS COMPLAINANT'S COUNSEL

**IMPORTANT:  If you are bringing a cross complaint against new parties, you are, likewise, required to serve this Notice of Assignment pursuant to California Rules of Court, Rule 3.110 and Notice of Order to Show Cause date and Notice of Case Management Conference date on the new cross defendants.**

Date:  December 01, 2022

**TAMARAH HARBER-PICKENS**
CLERK OF THE SUPERIOR COURT

Signed: 12/1/2022 8:12:56 AM

By:   _____
Edith Carrillo, Deputy Clerk

ANTHONY CORTEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED VS
CONVERGENT OUTSOURCING, INC.
BCV-22-103113

The Clerk of the Superior Court's office has received a civil complaint from you for filing.  Pursuant to the Trial Court Delay Reduction Act, your case has been assigned to the Honorable Thomas S. Clark as monitoring judge.

Judge Thomas S. Clark has instituted a direct calendaring system for all cases assigned to him/her as the monitoring judge.

All law and motion, case management and trial setting conferences, ex parte matters and trials will be scheduled before him/her in Bakersfield Department 17 located at 1415 Truxtun Avenue. This will involve all cases in which the clerk has assigned the initials TSC to the complaint at the time of filing.  Counsel is expected to make the initials of the monitoring judge a part of the case number on all pleadings and papers.

Law & Motion and Ex-Parte hearing dates must be pre-cleared by contacting the Direct Calendaring Clerk at  (661) 868-7204.   Tentative rulings can be located by visiting "http://www.kern.courts.ca.gov/", after 4:00 pm.  Click on the Non-Criminal Case Information link to enter the case number.  Please note, not all departments provide tentative rulings.

At the time of filing the complaint, plaintiff's counsel will be given a Notice of Case Management Conference which sets a conference approximately one hundred eighty (180) days after filing of the complaint.  This notice must be served with the summons and complaint on all defendants. Defendants must serve the notice on all cross-defendants named.  The notice must also be served on interveners and lien claimants.

Telephonic appearances for case management conferences and law and motion hearings are available through Court Call. The toll free telephone number for Court Call is (888) 88-COURT.  Proper procedures must be complied with under California Rules of Court, Rule 3.670.  Arrangements to make appearances through Court Call must be made at least five (5) court days prior to the hearing date.

Another judge will hear settlement conferences in cases assigned to Judge Thomas S. Clark.  However, those cases that do not settle will be set for trial before him/her.

ANTHONY CORTEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED VS
CONVERGENT OUTSOURCING, INC.
BCV-22-103113

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF KERN
### SPECIAL RULES RELATING TO CASE MANAGEMENT CONFERENCES

At least fifteen (15) days prior to the case management conference, each party shall prepare, file and serve on each other party a case management conference statement providing the Court with the following information:

1. The "at-issue" status of the case including any new parties that may be contemplated;
2. A brief statement of the type of case and the general facts or contentions;
3. A description of the discovery done to date and that contemplated to be done;
4. Estimated time for trial and whether a jury is demanded;
5. Whether or not the case is entitled to priority in trial setting and if so, the legal authority thereof;
6. An evaluation of the case for alternative dispute resolution, including arbitration (judicial or binding), mediation or private judge handling;
7. If a person injury action, a description of the injuries sustained by each plaintiff and the elements of claimed damage;
8. A statement of any settlement negotiations undertaken thus far;
9. The name of the attorney primary responsible for the case on behalf of the party filing the statement.

More than one party may join in the filing of a single statement.

The case management conference shall be attended by the attorney primarily responsible for the case on behalf of each party or a member of his or her firm or counsel formally associated in the case.  The attorney attending shall be thoroughly familiar with the case, and be able to engage in meaningful discussions with court and counsel, and to enter into agreements on behalf of his or her client on the following subjects:

1. The "at-issue" status of the case including the dismissal of the unnamed doe defendants or cross-defendants by agreement of all parties;
2. Discovery conducted and remaining to be done;
3. Amenability of the case to alternative dispute resolution including, but no limited to, arbitration (judicial or binding), mediation, and private judge handling.
4. Delineation of issues including stipulation of facts not in substantial controversy;
5. Settlement prospects;
6. Setting the matter for trial, pre-trial conferences, settlement conference or further case management conference;
7. Any other matters relevant to the processing of the case to a final resolution.

Any violation of these rules shall result in the imposition of substantial sanctions which may include monetary, issue, termination, or other appropriate sanctions.

ANTHONY CORTEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED VS
CONVERGENT OUTSOURCING, INC.
BCV-22-103113

## CERTIFICATE OF POSTING

The undersigned, of said Kern County, certify:  That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the ***Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference*** attached hereto on all interested parties and any respective counsel of record in the within action by posting true copies thereof,  to the Superior Court of California, County of Kern, Non-Criminal Case Information Portal (https://www.kern.courts.ca.gov).


Date of Posting:          December 01, 2022

Place of Posting:         Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

                                                              **TAMARAH HARBER-PICKENS**
                                                              CLERK OF THE SUPERIOR COURT
Date:  December 01, 2022

                                                    Signed: 12/1/2022 8:12:57 AM
                                         By:      _____
                                                    Edith Carrillo, Deputy Clerk

Certificate of Posting - Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

Page **4** of **4**

# SUMMONS
## (CITACION JUDICIAL)

Case 1:23-cv-00391-JLT-SKO   Document 1-1   Filed 03/02/23   Page 34 of 133

ELECTRONICALLY FILED
12/7/2022

Kern County Superior Court

By Alejandra Velazquez, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CONVERGENT OUTSOURCING, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ANTHONY CORTEZ, individually and on behalf of all others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Kern<br>1215 Truxtun Avenue, Bakersfield, CA 93301 | CASE NUMBER:<br>*(Número del Caso):*<br>BCV-22-103113 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Abbas Kazerounian, Esq.; Mona Amini, Esq. - Kazerouni Law Group, APC - 245 Fischer Ave., Unit D1, Costa Mesa, CA 92626 - Telephone: (800) 400-6808

| DATE: 12/7/2022 | TAMARAH HARBER-PICKENS | Clerk, by | | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | *alev* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov